We have the attorneys on the first, oh, I'm sorry, could you go to the first case, please? Would the attorneys on the case please step up? Good morning, Counselor. Would you identify your names for the court, please? Assistant State's Attorney Brian Levitsky on behalf of the people of the City of Illinois. Sharon Butenissim on behalf of Paulborough. Just as a general announcement for everybody in the court, unless you've already been instructed, if there's a fire drill and you hear it go off, we're not participating, okay? Don't abandon your positions. All right, you have 20 minutes aside. Would you like to reserve time for rebuttal? I'd like to reserve five minutes for rebuttal, please. Five minutes, okay. Just keep in mind, the microphones are there for recording, but they don't amplify, so speak up with your arguments, okay? We'll go ahead and start with the appellant. May it please the court? Would you like to say your name was? Sharon Butenissim. Your Honors, I will be discussing both issues raised in the briefs today. Paul Brock was charged with knowingly failing to report in person every 90 days under Section 6 of the Sex Offender Registration Act. Yet it is undisputed that Brock did report to the police station in person on April 18th, which was within 90 days of his last reporting. That is all that Brock was required to do under Section 6 of the Act. The State obfuscates the issue by pointing to every other part of the Act that it possibly can, but the fact remains that the State only charged Brock with violating Section 6. At trial, Brock was only on notice as to the charge that he violated the in-person reporting requirement, and that is the charge that he defended himself against. If this Court does find that Section 6 somehow incorporates other parts of the Act, the State didn't prove that Brock violated any of those provisions either. The State presented no evidence that Brock had moved three days before April 18th, and there was no specific evidence presented as to what identification he gave or what was required, other than Officer Ciproon's conclusory statement that he didn't complete his registration. There was no evidence presented as to what fee was owed, when was the last time he paid it, or anything else related to a purported fee. If Brock did not have the proper proof of address under Section 3, he should have been placed under SORA's weekly reporting requirement. Why? Because, Your Honor, that would comport with the purpose of the Act. The purpose of the Act is to make sure that the police know where sex offenders are at all times. A weekly reporting requirement involves more face-to-face contact between the sex offender and the police. And People v. Peterson has held that if you don't provide the proper proof of address, in addition to situations where you don't have a fixed address, the weekly reporting requirement is the proper mechanism. Was there any evidence that this defendant didn't have a fixed address? Wasn't the issue that he didn't have proof of the fixed address? Yes, Your Honor. When he reported on April 18th in person, which again was all that Section 6 required, he reported that he had moved. But he didn't say, I moved and now I'm homeless. He said, I moved to a new address. And they asked him, what is that new address? And he didn't have proof. Isn't that kind of how it went? Yes, Your Honor. He did come back two days later, as the police asked him to do, and he brought with him an ID with the new address that he had reported to them two days earlier. And so at that point, they did have his new address. So I don't believe at that point that they needed to place him under the weekly reporting requirement. My only argument here is that as opposed to turning him away and saying, you don't have what we need, you didn't complete your registration, goodbye. Well, he said he came back two days later. Who else said that? It's true that it came from Brock's testimony, but the trial judge appeared to find his testimony to be credible. And the reasonable inference to draw that they knew where he lived, they found him at the address, the new address that he gave two months later. So it's reasonable to believe police had his new address on file, which, again, is the purpose of the act, and specifically of Section 6. The purpose is to make sure they know where he is. He showed up within the 90 days. Counsel, if he came back two days later, as he claims, what happened then? He claims that he came back two days later, provided the new state ID with his new address, and then the police told him, you need to pay a $100 fee. He claims he didn't have the fee and that they gave him approximately two months to come up with the fee. But I do want to point out that he wasn't charged with not having the fee. But let me ask you this. So they gave him two months and said, we'll extend this for two months, you've got to come back. Did he come back in that time? He did not come back. When he was arrested, it had been just over the two months. A couple points about that, though. One is that when he was arrested, it was still within the 90 days from when he had last reported in person at the police station. So at that point, there really was no ‑‑ That's his argument. My question is much more narrow and more specific. They gave him an additional 90 days. Did he come back within that time? That's a yes or no question, Counsel. He did not come back within the two months. Ninety days had not passed yet. Two months had gone by, but 90 days had not gone by. Okay. So he didn't come back within the two months that they gave him, right? That is correct. Okay. All right. When he was arrested, 90 days had not passed since April 18th, where he had shown up, reported in person, and reported his new address, which, again, is all that Section 6 requires. The state did not charge him under Section 3 with failure to provide proof of address or fee or any of the details. Section 6 uses the word reporting. Let me ask you about the $100. And I'm going to ask your opponent the same thing. The statute requires registration, and we all understand what the purpose of that is. What about the $100? If he doesn't have the $100, isn't there a provision whereby registration can still take place? Because not all sex offenders will have already $100 to pay. Okay. So whose responsibility is that to bring it to the attention of the police, the registering officer, that $100, he doesn't have the $100? Is it your client's responsibility to say, I don't have the $100, I'm unlikely to get the $100, but I still have to register? Whose responsibility is that? I mean, you're aware there is a mechanism in the act for the police at their discretion to waive the fee entirely. Right. But how would the police know that the fee needs to be waived? Well, when he showed up on April 20th and was told that he needed to pay a fee, and he said he couldn't pay it, they could have waived the fee then, and they would have, and that would have completely taken his address and known where he was. But they told him to come back in two months, and he didn't come back in two months. But let's just speak hypothetically for a moment. If he had come back in two months and said, I still don't have the $100, would the mechanism then kick in for registering this defendant without the payment of the $100? I believe so. I believe so, Your Honor. But your client didn't come back, did he? That's true. I mean, he was arrested on July 3rd, and he had lost an ear on April 20th. Obviously, I don't know what he would have done had he not been arrested, but he knew he needed to show up in person every night. The only thing we do know is that the police gave him an additional amount of time, and he did not come back within that particular time, amount of time, and he was subsequently arrested. I think we can all agree on that, right? Yes, Your Honor. He testified at trial that he was told that the police could waive the fee, and they did not waive it at that time when he came there. That is correct. However, I just wanted to add again that there was no evidence at trial about really hardly any evidence about this fee. There was no evidence presented as to whether he tried to pay, how much he had, what the police said. Do you know what's bothering me about this, counsel? I mean, your client, this was not the first go-round for him. He is a convicted sex offender. He knows that registration is required. So if the cops sent him away and said, come back in two months, what did he think was going to happen if he didn't come back? I assume because he wasn't able to get the money together, I assume that's why he didn't return. He made a choice. I tell my minor child this. There are consequences to choices. He made a choice not to come back in two months, right? And something happened, and the something is that he didn't fulfill the registration requirements. Isn't that what happened? But, John, there were other ways for the police to handle this that would have comported much more with the purpose of the act. They could have waived the fee on April 20th. They could have, if they said he still didn't have the proper proof of address, which he did at that point, they could have placed him under the weekly reporting requirement. Turning him away doesn't make sense under the act. That way they would have no idea where he was, and they wouldn't be tracking him at all. Counsel, even if we agree with you, say for the sake of argument that we agree with you, that turning him away really was not a reasonable thing to do. Once he was turned away and given a two-month grace period to come back, what should have happened in that two-month period? That's what I'm trying to get at. Well, I mean, he did say, his testimony was that he was given approximately two months. I think that if he had come back within the 90 days, that would have still been reasonable, Your Honor, given that he knew he had to report in person every 90 days under Section 6 of SOAR, which is a more onerous requirement than the yearly requirement that many sex offenders have. And if he had come back within the 90 days, I think that would have been, he didn't have a chance to do that. Counsel, do you think it's reasonable that he thought that the police expected him to come back in 90 days instead of two months after they, when the police presented him with the deadline of two months, didn't that kind of change the game? Didn't that indicate that the expectation was two months, not 90 days? I agree, Your Honor, and I don't know, you know, it's not clear from the record why exactly he did not return. However, again, I just want to go back to what he was charged with and what he defended himself against at trial. He was charged with violating Section 6. Failure to report in person within 90 days and failure to report his address. He didn't violate either of those provisions. He reported on April 18 in person and reported that he had changed his address. Section 3 is a discrete part of the Act. It has completely different requirements, and the legislature used different words, registration versus reporting. These are not the same thing, or there would be extra words in the Act, extra sections, for no reason. Even if we agree that he should have returned in two months, and ideally with the fee, that wasn't what he was charged with violating at trial. It wasn't what he defended himself against. Is it your argument that it's immaterial that he didn't come back in two months? Correct. You know, he didn't come back in two months, but he did report in person within 90 days. He did not violate Section 6. Everything else related to Section 3 is immaterial. That is my argument, Your Honor. Brock respectfully asks this Court to reverse his conviction for violation of Section 6 of the Sex Offender Registration Act. Thank you. I'd like to address Issue 2. This issue should be easily resolved based on People v. Hall, a recent decision from this Court and this very division. People v. Hall involved identical facts to this case. Hall, like Brock, was charged with violating Section 6 of the Act and was subject to the Act's registration requirements because of a prior conviction for aggravated criminal sexual assault. That conviction was also then used to make him eligible for Class X sentencing. This Court found in Hall, and should so find here, that to use that conviction twice, once as an element of the underlying offense, and again to enhance the defendant's sentence, is an impermissible double enhancement. Hall is the last in a long line of cases to find such a double enhancement is impermissible. Therefore, the trial court erred in finding Brock eligible for Class X sentencing. The sentence is void, and the matter should be remanded for resentencing, Your Honors. Thank you very much. Thank you. Mr. Levitsky. May it please the Court, Assistant State's Attorney Brian Levitsky on behalf of the People. As Justice Cunningham noted, the defendant is not new to the requirements of the Sex Offender Registration Act. The defendant was convicted in 1994 of indecent liberties with a child. He was convicted 10 years later of aggravated criminal sexual assault with a weapon. He was subject to the requirements of the Sex Offender Registration Act ever since. His first conviction for failure to register was in 1994. He was also convicted in 1995 and 1996. The facts in this case establish that he also violated the Sex Offender Registration Act two ways in this case. One, he failed to complete a registration on April 18, 2012, and when he failed to complete a registration, within three days of changing his address. Counsel, you know, he reported on the 90th day. You know, it would have been better had he planned ahead a little better, but he reported on the 90th day. How does this not satisfy the requirement under Section 6 that he, that a person who was convicted of being sexually dangerous or a violent offender must report in person every 90 days? Report, not report and register. It says report. Can you respond to that? The statute is clear. It does say report, and it does say report in a section where it also says register. So can you report without registering? The way that the statute is structured, if we look at it together, sections Just under this section, if you read this section, can a person who is required to report, report without registering? This section doesn't define what report means. What do you think report means? Report, if we're looking at Section 6 and all of the Sex Offender Registration Act, report seems to mean renew registration, and that's how it was explained to the defendant on January 19th. So you don't have to go to the place? You can just renew your registration through the mail? Is that what you think? Registration, renew registration in person with a local law enforcement agency. So your definition of report is what? Can you tell me again? The defendant would have to go to the law enforcement agency with which he last registered within 90 days due to his conviction of the previous conviction of the Sex Offender Registration Act. He would have to provide all the information that's required under Section 3, which includes identification which substantiates his registering address. So if that's the case, what does registration mean? If report means all of that, what does registration mean? Looking at the way that registration and report are used in Section 6, it appears that registration means an initial registration and reporting means a subsequent registration. For example, when it says that a person has to report every 90 days, it would mean 90 days after their initial registration and then 90 days after their previous registration. And that interpretation is supported by Section 3.8.10, which refers to periodic and annual registration under Section 6 of the Act. So let me ask you this. Is it your position that you must report and register every 90 days as well as report and register within three days after moving? I mean, if you are defining report the way you just defined it, is that your argument? That's correct. There are two different parts of Section 6 that are at issue here. The first one says that you have to report every 90 days. And then the other, later on in Section 6, it says that if any other person required to register under this article changes his or her resident's address, he or she shall report in person to the law enforcement agency with whom he or she last registered his or her new address and register in person with the appropriate law enforcement agency within the time period specified in Section 3. And so Section 6 does discuss the duties of an individual who has to register annually, every 90 days, weekly, and for the circumstances where they change their address. And Section 3 lays out what happens when they go to the law enforcement agency, what they have to do. And that includes providing identification, which substantiates their residence, and includes paying the annual fee or the annual renewal fee. Was he given six years on each to be served concurrently? He was convicted of two different counts. They merged at sentencing, and then he was sentenced to six years as a mandatory Class X offender on the merged count. Thank you. The facts establish that the defendant knew that he had to register on April 18th. It's undisputed that he completed no registration after that date. He knew that his registration required more than simply appearing at the law enforcement agency and signing a book. He was told. How do you know he knew that? You know, I was asking you the questions because the statute, the sections of the statute really doesn't say that. How do you know he knew that? Officer Sarpin read the defendant that if you have been convicted of a violation of this act after July 1st, 2005, which he was, you must register in person no later than 90 days after the date of your last registration and 90 days thereafter for the remainder of your registration requirement. Furthermore, the sex offender registration form said at the top page, which you signed, 90-day renewal. So the defendant did not. I think I'm asking more about the disagreement between reporting and registering. You know, your opponent really believes that reporting and registering is different from what you're saying. And you're kind of glossing over, well, he knew he had to report and register. And I'm asking you, how do you know that? Because that's not what the statute says. The section under which you charged him didn't say anything about registering. It talked about reporting. And he did report. So I'm asking you, how can you so conclusively state that he knew that that also meant registering? How do you know that? Again, the statute is clear. It does say report. But, I mean, even when the defendant went to the law enforcement agency on January 19th, he had to give in his driver's license that had his address on it, for example. Reporting has to require more than simply showing up. If that's what the defendant did on January 19th, where he gave his driver's license for the officer to copy it, he gave fingerprints, this was all included in People's Exhibit 1, which was admitted to trial. If reporting means doing less than what he had already done, and the Sex Offender Registration Act is clearly designed to collect all this information regularly, then the defendant was reading into the statute of limitation, which doesn't seem to exist there. And, frankly, the statute does say report. But it seems most consistent with the purpose of the statute and with the other sections of the statute that the legislature enacted that report means renew registration. If there are no further... There are two distinct duties under Section 6. Why not charge them with both? Again, when Section 6 refers to report, looking at the statute, it does mean more than simply showing up. It does mean renew registration. So you just explained it to us that it means more than showing up. It means more than reporting. Is that correct? That's correct. So it doesn't include... In other words, it's a conjunctive report and register, not report including register, right? Because it's more than just showing up. It's more than just appearing and reporting. That's correct. The amendment does say that. But, again, defendant knew exactly what the requirements were from his years of having reported under the Sex Offender Registration Act. Wait a minute. So is it because you know that the defendant knew something, you don't have to indict him or make sure that you charge him with what the correct statutory provisions are because you assume that he knows? Is that what you're saying? I hope not. I mean, the indictment did refer to the dates of the offense to the Sex Offender Registration Act. It did say that it was a violation of the Sex Offender Registration Act. It did include reporting. It didn't say renewing a registration. But under these circumstances, I mean, the claim is of defendants that the evidence of trial is insufficient to show that he violated the Sex Offender Registration Act. And the other way on the evidence is that he didn't complete a registration act in two ways. He didn't complete any sort of registration after April 8th. I'm sorry, after January 19th. Can one register without reporting? Can they do it by mail? Can they do it on the Internet? There might be some instances where that would work. It would seem to me the report criteria is solely there to guarantee that this registration takes place in person. I'm not aware of any specific information that a registrant would be able to provide through mail. However, where it is report and the statute discusses registering in person, then it would seem the defendant at least was required to provide this information in person to the police. Thank you. If there are no further questions on that issue, I'd like to move on to the second. And there wasn't a federal enhancement in this case because defendant's conviction for aggravated criminal sexual assault was not an element of the offense of failure to register as a sex offender. The statute says that an individual who is a sex offender is guilty of a felony if they violate a provision of the act. Sex offender is defined extraordinarily broadly under the statute. An individual can be deemed a sex offender for a conviction, as in defendant's case, or after being found not guilty by reason of insanity, or after a finding of not not guilty, after a discharge hearing under the Mental Health and Disability Code, or after a conviction for homicide. And... Do you want me to continue? No. Okay. So... Because... May I have your attention, please? This is an emergency. You are about to board. That's where you should go. The object is on the fourth floor. This is an emergency. Thank you. Sorry for the interruption. Continue. Um... Defendant's status as a sex offender could have also been proved by... Defendant's status as a sex offender could have also been established by calling in the officer who initiated... Here. The Issues Instruction, Paranoid Pattern Instruction, Criminal 4th, 9.43h, provides two propositions. First, that the defendant is a sex offender. Second, that the defendant knowingly failed to register. It's not required for a jury defendant to convict a defendant of this offense that he was convicted of a specific crime. There's no danger in this case that the registrar already considered the severity of the class... of defendant's class status ACSA case because they could have found that he was a... he was required to register as a sex offender after a finding of, again, not guilty by reason of insanity. Counsel, you argue in your brief that People v. Hall was wrongly decided. Can you speak to that a bit? Why do you think so? Sure. Hall started out with a premise that the defendant's ACSA conviction was an element to the offense. And then it concluded that because it was an element to the offense and because it was used to establish his mandatory... that it was an impermissible double enhancement. But reading the statute, the pattern jury instructions in this case, it wasn't an element to the offense that the defendant... was convicted of a particular offense. It was only required to show that he was a sex offender. And so there was no impermissible double enhancement in this case. And if there are no further questions, there are people respectfully asked to speak. Perfect. We ask you to affirm the defendant's conviction and sentence. Thank you. Thank you. Thank you. Just have a couple brief points to make, Your Honor. I'll begin with Issue 2 where we left off. Just to reiterate that People v. Hall was correctly decided. Clearly the prior conviction was an element of the offense that the state had to prove since it was mentioned specifically... in the indictment with the case number and the state entered the certified copy of the conviction at trial. Also, all of the ways that one can become subject to the reporting requirements under the Act... require some formal disposition of a sex offense. As to the first issue, the state has suggested that reporting might mean some kind of subsequent registration. But if we just look, for example, at the weekly reporting requirement mechanism, that uses the word report. Which I think further confirms the fact that reporting refers to reporting in person and not necessarily registration. Certainly the weekly reporting requirement is not asking somebody, a sex offender, to register in all the ways set out in Section 3 every single week. Thank you very much. Thank you. Thank you. I want to thank both sides of the council for preparing very good briefs and presenting arguments, especially for your patience during the fire drill. The court will take the matter under advisement. Thank you.